UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNN C. JANSON,

    Plaintiff,                                                Hon. Janet T. Neff

v.                                                         Case No. 1:08-cv-00981

EGYPT VALLEY COUNTRY CLUB, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

I.      INTRODUCTION

This matter is before the Court on Defendants/Counter-Plaintiffs' Motion for Partial Dismissal and/or Partial Judgment on the Pleadings (Dkt. 40)[1], which was referred to the undersigned by the Honorable Janet T. Neff for report and recommendation. The motion seeks to dismiss Plaintiff's Second Amended Complaint.[2] The parties were heard initially on this referral on July 10, 2009. Defendant's motion was taken under advisement and Plaintiff was given yet another chance to attempt to amend his complaint to conform to what seemed to the court to be ever-shifting theories of recovery. Plaintiff filed his amended complaint. Defendants supplemented their brief in support of their motion to dismiss, and the parties were heard again on October 2, 2009.[3] The undersigned recommends that Defendants' motion be granted in part and denied in part.

---

[1] Defendant Pastoor is separately represented but joined in the Defendant's requested relief.

[2] The title to Plaintiff's complaint is somewhat misleading, as it is actually Plaintiff's fourth complaint.

[3] In their Supplemental Pleading (Dkt. 81-82) Defendants seek dismissal of Plaintiff's entire complaint.

## II. BACKGROUND FACTS

Plaintiff Lynn C. Janson became head golf professional of what is presently called Egypt Valley Country Club ("the Club") in 1976.[4] In addition to his salary earned as a contract employee, Plaintiff also owned and operated the club's pro shop under the name of LCJ, Ltd. He was the sole owner of LCJ, Ltd. In 2001, Plaintiff engaged in negotiations and entered a contract regarding his employment with the Club, Exhibit C to Dkt. 70. The contract acknowledges Plaintiff's prior employment and provides that upon the execution of the agreement all previous employment agreements between the parties are revoked and superseded. The contract further provided that it should be renewed annually to the date of December 31, 2011, unless previously terminated. It further provided that the terms and conditions of the agreement would be reviewed in the years 2004, 2007, and 2009, or more frequently upon the written request of either party. *Id.* at ¶ 2. On November 12, 2004, Plaintiff and Defendant renegotiated his employment contract and executed a "Amended and Restated Employment Agreement."

Plaintiff alleges that in 2005 he was informed by the Club's acting Chief Operating Executive, Defendant Stephen Pastoor, that the Club wanted to own and operate the pro shop that had been owned and operated by Plaintiff. Plaintiff did not want to sell the pro shop, as profits from the shop accounted for a significant portion of his annual income. According to Plaintiff, he was advised by Defendant Pastoor that if he did not sell the pro shop to the Club the Board of Directors intended to invoke the at-will clause in his employment contract and terminate his employment with the Club. Plaintiff also alleges that the board redrafted the by-laws of the nonprofit corporation in 2006 to permit boards members to be paid compensation for services provided to the Club and to engage in awarding lucrative

---

[4] Plaintiff's recitation of facts is largely adopted because of the current procedural posture of this case.

contracts to certain board members. Plaintiff alleges that this is significant with respect to the Plaintiff's racketeering claim.

On February 8, 2007, the Club and Plaintiff, according to Plaintiff under direct threat to Plaintiff's continued employment, executed a "Second Amended and Restated Employment Agreement," further curtailing Plaintiff's income and employment benefits with the Club. In addition, Plaintiff alleges that on that same day, believing it was the only way to save his employment, he executed a purchase agreement and bill of sale for his pro shop business and all of its inventory to the Club.

Meanwhile, there had been allegations by another employee of the Club pertaining to allegedly inappropriate conduct by Defendant Pastoor, who was General Manager or Chief Operating Executive of Egypt Valley Country Club during at least part of the relevant time period. Plaintiff states that in late July 2007 he was instructed to meet with attorney Scott Dwyer of Mika Meyers Beckett & Jones to conduct an interview regarding those allegations. According to Plaintiff he was specifically instructed to only disclose a version of events that benefitted the Club, and was advised by Defendant Wayne P. Bryan, "If heads roll because of this it will be more than one."

Plaintiff only consented to be interviewed by Mr. Dwyer on the condition that the interview be recorded by a certified court reporter. According to Plaintiff this was unacceptable to the Club. The Club responded by suspending Plaintiff for a week without pay for "insubordination." On September 24, 2007, Plaintiff's acting personal attorney, Roger Boer, sent a letter to the board of directors demanding a hearing on the insubordination claim. On September 27, 2007, Plaintiff was notified that he was suspended from membership as of that date and on October 4, 2007, he was notified of his discharge.

III.  ANALYSIS

    A.    Standard of Review

Defendants bring this motion pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint by evaluating the facts in a light most favorable to the plaintiff to determine whether the complaint states a valid claim for relief. *See, Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To sustain a motion pursuant to Rule 12(b)(6) it requires the movant to demonstrate that it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief. In addition, the Supreme Court has stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) that a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." 550 U.S. at 545. As explained subsequently in *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). *(Twombly citations omitted.)*

    B.    Counts 1 and 2 - Breach of Contract

In both Counts 1 and 2 Plaintiff relies on a breach of the December 27, 2001 contract in support of his contract claim. The court specifically inquired at the October 2, 2009 oral argument

whether Plaintiff was placing any reliance on the 2004 and 2007 contracts, both of which were indisputably executed by Plaintiff and Egypt Valley Country Club. Plaintiff's counsel stated that reliance was solely on the 2001 contract.

Although Plaintiff signed two subsequent contracts in 2004 and 2007, both of which were intended to amend and restate in its entirety the previous contract, Plaintiff argues that both of these amendments were without consideration and thus of no effect, and that the 2001 contract still controls. The court disagrees with Plaintiff's position for the following reasons. First, the 2001 contract specifically contemplated review by the parties in 2004, 2007 and 2009. *See*, Exhibit C to Dkt. 70 at p. 2, ¶II.

Second, under Michigan law, specifically with respect to employment contracts, the employee's continued employment after the employer alters the terms of their agreement is consideration for the new agreement or modification. *See, e.g., Depriest v. Print Techs. & Servs.*, 2005 Mich. App. LEXIS 605 at *3-4 (March 8, 2005), Exhibit D to Dkt. 70; *cf., Bullock v. Automobile Club of Michigan*, 432 Mich. 472 (1989); *In re Certified Question*, 432 Mich. 438, 446 (1989). Further, a Michigan statute provides that:

> An agreement . . . to change, modify, or to discharge in whole or in part, any contract [or] obligation. . . shall not be invalid because of the absence of consideration: Provided, that the agreement changing, modifying, or discharging such contract, obligation. . . shall not be valid or binding unless it shall be in writing and signed by the party against whom it is sought to enforce the change, modification, or discharge.

MCL § 566.1.

The court opines that had Plaintiff, in 2004, sought to enforce the 2001 contract on the theory that Egypt Valley Country Club was simply promising to do no more and perhaps less than it was already obligated to do under the 2001 agreement, his lack of consideration argument might be in a

different posture. However, this is not what he did. Michigan recognizes that an essential element of a contract is legal consideration, *Yerkovich v. AAA*, 461 Mich. 732, 740 (2000), and generally consideration cannot be the performance or promise to perform that which one party was already required to do under the terms of the existing agreement. *Id.* at 740-41.

The court reconciles this seeming difference between the statute and the principle of the *Depriest* case as follows. Plaintiff could have stood on the 2001 contract and refused to modify it, suing the Defendant if he thought it was breached. However, what he did instead was to agree to modify the contract and continue working for Egypt Valley Country Club, clearly bringing MCL § 566.1 into play. The facts of this case are clearly closer to those of *Depriest* and are governed by the statute as opposed to the theory relied upon by Plaintiff. *Yerkovich* is inapposite. In *Yerkovich* there was no ongoing relationship between the parties. It involved the one time interpretation of the insured's and insurer's rights under an insurance contract. There was no ongoing relationship to serve as consideration for the modification(s) made by agreement to the parties' relationship. Thus, the undersigned recommends that Counts 1 and 2 be **dismissed with prejudice**.

C. <u>Count 3- Retaliatory Discharge</u>

Count 3 is labeled as a claim of retaliatory discharge; however, it appears to be really a claim for discharge in violation of public policy. Allegations implicated are: "In 2006 and 2007, Plaintiff was directly and indirectly instructed to ignore, minimize, and obfuscate the conduct of Defendant Pastoor by Defendants Lawson and Bryan." Plaintiff's Second Amended Complaint, Dkt. 66, ¶45. Plaintiff adds at ¶51: "The Defendants offered "insubordination" was the reason for his dismissal; rather it was the Plaintiffs refusal to perjure himself that was the reason for his termination."

The Michigan Supreme Court, in *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 694-696 (1982), recognized a cause of action for wrongful discharge in violation of public policy to include: 1) explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty; 2) the employee's failure or refusal to violate a law in the course of employment; and 3) the employee's exercise of a right conferred by a well-established legislative enactment. Plaintiff's allegations implicate only the second recognized basis.

However, Plaintiff's Second Amended Complaint is devoid of any allegation that any defendant actually asked or instructed him to violate the law. The fact that some or all of the defendants asked him to participate in an internal investigation of another employee's allegations of sexual harassment cannot be stretched to an instruction to commit perjury. Michigan law defines "perjury" as "any person authorized by any statute of the state to take an oath, or any person of whom an oath shall be required by law, who shall wilfully swear falsely, in regard to any matter or thing, respecting which such oath is authorized to require, shall be guilty of perjury. . . ." MCL § 750.423. What is lacking is an allegation that Plaintiff was instructed to wilfully swear falsely. Indeed, there is not even an allegation that he was requested or ordered to give a statement under oath. Even assuming that Plaintiff is implying that he would have been instructed to lie under oath, it appears that he "jumped the gun" because such had not yet occurred. *Pratt v. Brown Mach. Co., a Div. of John Brown, Inc.*, 855 F.2d 1225 (6th Cir., 1988), upon which Plaintiff relies, is distinguishable. *Pratt* involved a criminal investigation into alleged supervisory employee misconduct. Here there is no allegation there was any ongoing criminal investigation at the time Plaintiff was terminated, nor is there any allegation that Plaintiff was ever told to perjure himself.

This case is more analogous to *Piasecki v. City of Hamtramck*, 249 Mich.App. 37 (2001). *Piasecki* involved discharge of an employee as director of income tax by an employer city because of her failure to divulge confidential tax information concerning the prior mayor. The Michigan Court of Appeals found that the employee's compliance with the request would not have violated the law. Here, Egypt Valley Country Club certainly had the right to conduct its own internal investigation of allegations regarding supervisory employee misconduct. Plaintiff's compliance with the request to participate in an internal interview would have violated no law. The undersigned recommends that Count 3 be **dismissed with prejudice**.

D.  Count 4 - Request for Dissolution Pursuant to MCL § 450.2825

Plaintiff brings a claim for dissolution pursuant to MCL § 450.2825, a provision of the Michigan Nonprofit Corporation Act ("MCNA"), MCL § 450.2101, *et seq.* A review of the MCNA demonstrates that there is no parallel to MCL § 450.1489(1)(f), a provision of the Michigan Business Corporations Act ("MBCA"), MCL § 450.1101, *et seq.* authorizing shareholder derivative suits seeking damages.

In Count Four of his Second Amended Complaint, Plaintiff seeks the dissolution of the Egypt Valley Country Club. As authority for such, Plaintiff relies on Mich. Comp. Laws § 450.2825 which expressly grants to "a shareholder, member, or director" of a non-profit corporation the right to seek the dissolution thereof "when it is established that the acts of the directors or those in control of the corporation are illegal, fraudulent, or wilfully unfair and oppressive to the corporation or to such shareholder or member or contrary to the purposes of the corporation." Defendants seek to dismiss this claim on the ground that Plaintiff lacks standing to assert such.

Defendants first assert that because Plaintiff "is not and never has been a shareholder or member of the corporation," he lacks standing to assert this particular claim. In his amended complaint,

however, Plaintiff asserts that he is a member of the Egypt Valley Country Club and has been since 1979. Defendants may ultimately be able to present evidence in support of their position, but at this juncture the allegations in Plaintiff's complaint are sufficient to defeat Defendants' motion to dismiss for failure to state a claim.

Defendants next assert that Plaintiff lacks standing to assert this claim because he has not personally suffered any injury distinct from any injury suffered by Egypt Valley. In support of this position, Defendants rely on a recent decision issue by the Honorable James Redford, in *Boer v. Egypt Valley Country Club*, No. 08-10211-CZ (Cir. Ct. Kent Cnty., June 30, 2009).

In *Boer*, the plaintiff, Roger Boer, sought to recover monetary damages as a result of alleged mismanagement by the Egypt Valley Board of Directors. *Id.* at 3-4. Boer asserted that Mich. Comp. Laws § 450.2825 permitted him to recover monetary damages. *Id.* at 5. As Judge Redford observed, however, "each and every power vested in the Circuit Court by the [Nonprofit Corporation Act] in [§ 450.2825] addresses the Court's authority in a suit seeking dissolution of the nonprofit corporation." As the court further observed, because Boer was not seeking to dissolve Egypt Valley Country Club, the "broad powers" articulated in § 450.2825 "do not apply to the instant case." *Id.* at 5-6. Accordingly, the court concluded that Boer could not maintain an action under § 450.2825 for money damages against a non-profit corporation.

The court continued its analysis, however, in the event that its conclusion regarding "the scope and applicability of MCL 450.285" was incorrect. In this respect, the court examined whether "an individual shareholder can sue in his own capacity for damages to the corporation." Relying on *Mazur v. Kammer*, 2008 WL 1989659 (Mich. Ct. App., May 8, 2008), Judge Redford concluded that even if § 450.2825 authorized a suit for money damages, Boer lacked standing to assert such a claim because

his alleged injuries "are not distinct from that of the corporation." *Boer*, No. 08-10211-CZ at 7-9. Defendants urge the Court to look to the *Boer* opinion for guidance on the ground that Plaintiff has asserted "essentially the same claims" as were asserted by Boer. Defendants assert that just as Boer lacked standing to seek money damages under § 450.2825, this Court should conclude that Plaintiff lacks standing under § 450.2825 to seek the dissolution of Egypt Valley Country Club. The Court is not persuaded.

Contrary to Defendants' assertion, the claim for money damages in *Boer* and the present claim for dissolution are not "essentially the same claims." As Judge Redford correctly observed, § 450.2825 does not provide for the recovery of monetary relief, but does expressly authorize a member of a non-profit corporation to seek the dissolution thereof under certain circumstances. Boer was seeking a type of relief not provided for in § 450.2825, whereas Plaintiff is requesting relief expressly authorized by this provision.

As for the portion of Judge Redford's opinion in which he found that Boer lacked standing to assert a claim for money damages because his alleged injuries "are not distinct from that of the corporation," the Court finds such inapplicable to the present circumstance. In that portion of his opinion, Judge Redford expressly stated that he was considering whether "an individual shareholder can sue in his own capacity for damages to the corporation." To answer this question, the court relied on *Mazur v. Kammer*, 2008 WL 1989659 (Mich. Ct. App., May 8, 2008).

In *Mazur*, five individuals formed a corporation for the purpose of maintaining a hunting camp. *Id.* at *1. After several years, two of the individuals "began considering ways to sell the property or otherwise end the parties' joint recreational venture." Two of the other individuals initiated legal action to prevent such action. One of the plaintiffs' claims was that two of the defendants had breached their

fiduciary duties. *Id.* The trial court subsequently dismissed these particular claims on the ground that the plaintiffs lacked standing. *Id.* at *2-4. The matter was appealed to the Michigan Court of Appeals, which affirmed the trial court's decision. *Id.* Specifically, the court of appeals determined that the plaintiffs lacked standing to pursue this particular claim in their individual capacity. *Id.* at *4. Specifically, the court observed that:

> the doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee.

While the court recognized that there exist exceptions to this limitation, it found that neither were applicable. The court concluded, therefore, that "where the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party." In this respect, the court determined that the injury to the plaintiffs was "the same as the loss suffered by the corporation, namely, the loss of the hunting camp." *Id.* Presumably, therefore, with respect to the loss of the hunting camp, the real party in interest (the party with standing) is the corporation not the individual shareholder thereof. Judge Redford concluded that the *Mazur* decision "is very instructive as to what a plaintiff must show to have claims as those [asserted by Boer] survive." Defendants assert that this Court should adopt such logic and find that Plaintiff lacks standing to assert this particular claim. The Court respectfully disagrees.

Here, Plaintiff is not seeking to assert a cause of action for injury to a corporation that should instead be asserted by the injured corporation. In such a circumstance, as was the case in *Mazur*, it may be appropriate to preclude the individual from asserting a claim that simply derives from his status as a shareholder in the corporation. On the other hand, the plain language of Mich. Comp. Laws § 450.2825 expressly authorizes a "shareholder, member, or director" of a non-profit corporation to seek

the dissolution of the corporation where "the acts of the directors or those in control of the corporation are illegal, fraudulent, or wilfully unfair and oppressive to the corporation *or* to such shareholder or member *or* contrary to the purposes of the corporation." *Id.* (emphasis added). The Court discerns a significant and dispositive distinction between these two types of claims.

In sum, Plaintiff is not seeking to assert the type of claim that was in dispute in *Boer* or *Mazur*. Rather, Plaintiff seeks relief that is expressly contemplated by Michigan law. The Court finds the *Mazur* decision to be inapposite to the present circumstance. The Court likewise finds that the *Boer* decision is limited to circumstances in which an individual relies on § 450.2825 to recover monetary damages. This distinction is not insignificant. As Judge Redford recognized, when an individual invokes § 450.2825 to seek the dissolution of a non-profit corporation (as opposed to money damages), the court possesses "broad powers" to hear and resolve such claims. *Boer*, No. 08-10211-CZ at 5-6; *see also*, *Lokuta v. Wyandotte Boat Club*, 2005 WL 356288 at *2 (Mich. Ct. App., Feb. 15, 2005). Accordingly, the Court recommends that Defendants' motion to dismiss Count Four of Plaintiff's Second Amended Complaint be **denied**.

        E.       <u>Count 5 - Invasion of Privacy/False Light</u>

In Count 5, Plaintiff alleges the false light theory of an invasion of privacy claim. To state such a claim, the following must be pled: (1) the defendant broadcasted to the public in general or to a large number of people; (2) information that would be highly objectionable to a reasonable person by attributing to the plaintiff characteristics, conduct or beliefs that were false; and (3) placed the plaintiff in a false position. *Porter v. Royal Oak*, 214 Mich. App. 478, 486-87 (1995). It is further required that the defendant knew of or acted in reckless disregard of the falsity of the publicized matter and the false

light in which the plaintiff would be placed. *Detroit Free Press v. Oakland Co. Sheriff*, 164 Mich. App. 656, 666 (1987).

The undersigned agrees with Defendants that there is no way most of Plaintiff's allegations in this count could possibly state a claim for false light because they do not allege that Defendants did anything. For example, the following allegations should be dismissed:

- the Townsley lawsuit received public attention (Dkt. 66 ¶ 61);

- the media placed attention on the Townsley lawsuit and Plaintiff's "contemporaneous" termination (Dkt. 66 ¶ 62);

- Townsley executed a memorandum regarding comments Pastoor made about other employees and club members, not including Plaintiff (Dkt. 66 ¶ 63);

- Defendants denied to the shareholders that Pastoor used offensive language (Dkt. 66 ¶ 64); and

- Defendants indicated to shareholders and members that the Townsley memorandum was false (Dkt. 66 ¶ 65).

None of these allegations states that Defendants made any statements about Plaintiff. Therefore, the undersigned concurs with Defendants that they cannot serve as the basis for a false light claim. However, the undersigned disagrees with Defendants that Plaintiff has failed to state a claim for invasion of privacy/false light in ¶ 66, which states that during a shareholder informational session Defendant

Phillip B. Todd accused Townsley and Plaintiff of a conspiracy to get rid of the Chief Operating Executive of the Club, Stephen Pastoor. Defendants allege that this cannot constitute a basis for an invasion of privacy/false light claim because the alleged statement was privileged and fails to meet the *Twombly* standard. The undersigned disagrees. It is plausible that Plaintiff could develop facts to overcome both of the stated defenses. Thus, the undersigned recommends that Defendants'

motion be **denied** in this regard as to Defendant Phillip B. Todd alone with regard to ¶ 66 of the Second Amended Complaint.

> F. Count 6 - Tortious Interference with a Contractual Relationship and
> Count 7 - Tortious Interference with Business and Social Relationships

The court also disagrees with Defendants that Counts 6 and 7 should be dismissed at this time. The Second Amended Complaint has cured the deficiencies found in earlier complaints in that neither of these counts are alleged against Egypt Valley Country Club. As Defendants correctly point out, under Michigan law Plaintiff cannot maintain an action against Egypt Valley Country Club for tortious interference with its own business relationship with Plaintiff. *See, e.g., Reed v. Mich. Metro Girl Scout Council*, 201 Mich. App. 10, 13 (1993). However, Counts 6 and 7 are no longer asserted against Egypt Valley Country Club. The undersigned also disagrees that they should be dismissed for failing to outline sufficient facts in support thereof.

Paragraphs 70 and 75, respectively, are sufficient to raise the issue of whether Defendants were acting for their own benefit and strictly personal motives. *Feaheny v. Caldwell*, 175 Mich.App. 291, 304-05 (1989). For these reasons, the undersigned recommends that Defendants' motion to dismiss Counts 6 and 7 be **denied** as to Defendants Stephen Pastoor, Jeffrey Lawson, Wayne P. Bryan, David Russell, and Phillip B. Todd.

> G. Count 8 - RICO Claims

Count 8 of Plaintiff's Second Amended Complaint purports to state a complaint under the civil Racketeer Influence and Corrupt Organizations Act. 18 U.S.C. §§ 1968 to 1968. At ¶ 84 Plaintiff alleges that the Defendants individually and collectively formed an unlawful enterprise when individual directors used club computers to transmit pornographic and obscene materials to

employees of the club, and further alleges that Defendants confiscated club computers in an effort to hide this activity. Paragraph 85 alleges that Defendant Stephen Pastoor engaged in sexual harassment and perpetrated sexual assault and battery on club employees.  Paragraph 86 alleges that the Defendants directly threatened Plaintiff and other employees with loss of their employment if they discussed Pastoor's activities.  It is also alleged that Defendants used the mail to furnish fraudulent reports to corporate shareholders in order to deliberately mislead them as to the economic status and viability of the corporation.  Paragraph 88 alleges that the Defendants ran a "club within a club" where lucrative contracts, together with other privileges and favors, were granted to shareholder members.  Paragraph 89 alleges that there was intentional violation of bank covenants causing the club to be in default on its loans.  Paragraphs 90 through 92 have to do with the alleged threat against Plaintiff that he would lose his employment if he failed to sell his pro shop to the club. Paragraph 93 alleges certain improprieties with respect to the minutes of the board of directors meetings by Defendant Pastoor.

To establish a pattern of racketeering activity, Plaintiff must allege at least two predicate acts of racketeering occurring within a ten year period.  18 U.S.C. § 1961(5).  The predicate acts alleged are offenses which are indictable under any number of federal statutes.  Here, Plaintiff alleges as predicate acts extortion in violation of the Hobbes Act, 18 U.S.C. § 1951; mail and wire fraud, 18 U.S.C. §§ 1341 and 1343; fraud and related activity in connection with access devices, 18 U.S.C. § 1029; bank fraud, 18 U.S.C. § 1344; mailing obscene or crime inciting matter, 18 U.S.C. § 1461, importation or transportation of obscene matter, 18 U.S.C. § 1462; mailing indecent matter on wrappers or envelopes, 18 U.S.C. § 1463; and broadcasting obscene language, 18 U.S.C. § 1464.

In addition to satisfying general pleading requirements discussed above, Plaintiff is held to a more rigorous standard of Rule 9(b) with regard to any claims based on fraud. Rule 9(b) requires that fraud be alleged "with particularity." Plaintiff must therefore allege the time, place, and content of the allegedly false statements; the fraudulent schemes; the fraudulent intent of the defendants; and the injury resulting from the fraud at a minimum. *See, U.S. ex rel. Bledsoe v. Community Health Systems, Inc.,* 342 F.3d 634, 643 (6th Cir. 2003).

### 1. Extortion in Violation of the Hobbes Act

The statute specifically defines extortion as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Upon careful review of the allegations contained in the Second Amended Complaint, accepted all well pleaded factual assertions as true, the court concludes that Plaintiff has not alleged predicate acts of extortion in regards to the Defendants. The only fear implied in Plaintiff's complaint is the fear of losing his employment. The threat to not perform a contract further until certain conditions are met does not constitute extortion. *See, e.g., Printers II, Inc. v. Professionals Pub., Inc.*, 784 F.2d 141, 148 (2nd Cir. 1986).

### 2. Mail Fraud and Wire Fraud

Plaintiff alleges predicate acts under RICO involving mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. In pleading these predicate acts, Plaintiff must comply with the heightened pleading standard established by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff's Second Amended Complaint wholly fails to do so. Additionally, exhibits attached to Plaintiff's RICO case statement appear to show exactly the opposite of many of the allegations contained in Plaintiff's Second Amended Complaint. From a common sense and an experiential point of view,

many of these allegations seem to relate solely to an internal dispute within the membership of the Egypt Valley Country Club regarding its management. Likewise, Plaintiff's attempt to assert a claim based on 18 U.S.C. § 1029, fraud and related activities in connection with access devices fails for the same reason.

        3.      <u>Predicate Acts Based on Alleged Communication of Obscene Material</u>

Plaintiff's Second Amended Complaint is wholly devoid of any description of the allegedly obscene material. Plaintiff clearly has not stated a claim under 18 U.S.C. § 1464 for broadcasting obscene language over the radio, nor any violation of 18 U.S.C. § 1463 for mailing indecent matter on wrappers or envelopes. As to the allegations of e-mailing obscene material to other employees, the court's common sense tells it that this may have been unprofessional and even dischargable conduct; however, the court finds that Plaintiff has not nudged its RICO claim in this regard across the line from conceivable to plausible that the material e-mailed constituted criminal conduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). See, e.g., *CSX Transp., Inc. v. Meserole Street Recycling, Inc.*, 570 F.Supp.2d 966, 970 (W.D. Mich. 2008) for an excellent discussion of the appropriate analysis of a civil RICO claim under *Twombly*. In summary, Plaintiff's RICO claim fails for various reasons, including the fact that it does not allege long-term criminal activity, but merely a routine if highly contentious business dispute, which is not what the statute was designed to address. *Beck v. Prupis*, 529 U.S. 494, 496 (2000). The undersigned recommends that Count 8 be **dismissed with prejudice**.

IV.    <u>CONCLUSION</u>

In conclusion, the Court recommends that Defendants/Counter-Plaintiffs' motion to dismiss (Dkt. 40, 81-82) be granted in part and denied in part. The undersigned recommends that Plaintiff's

Second Amended Complaint be dismissed with the exception of: Count 4; Count 5 as to Phillip B. Todd only; and Counts 6 and 7 as to Defendants Stephen Pastoor, Jeffrey Lawson, Wayne P. Bryan, David Russell, and Phillip B. Todd only, which should be allowed to proceed.

Respectfully submitted,

Date:  November 30, 2009      /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).